249 P.3d 669 (2011)
STATE of Washington, Respondent,
v.
Robert E. LARSON, Appellant.
No. 28174-4-III.
Court of Appeals of Washington, Division 3.
March 15, 2011.
*671 Eric J. Nielsen, Jennifer J. Sweigert, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Spokane, WA, for Respondent.
Jacqueline McMurtrie, UW Law Clinic-Innocence Project NW, Seattle, WA, Michael L. Cook, Karen S. Park, Mark J. Arnot, Schulte, Roth & Zabel, LLP, New York, NY, Amicus Curiae on behalf of the Innocence Network.
BROWN, J.
¶ 1 Robert E. Larson appeals his convictions for first degree robbery, two counts of first degree assault and two counts of drive-by shooting. Mr. Larson mainly contends the trial court erred in denying his new trial request based on expected exculpatory testimony from an alleged coparticipant who had *672 pleaded guilty. We agree the expected testimony is not newly discovered evidence and his trial counsel's tactical decision not to call this witness at trial does not amount to ineffective assistance. We reject the contention that the State improperly threatened the coparticipant with perjury to dissuade him from testifying at trial. Lastly, we find no merit in Mr. Larson's statement of additional grounds for review (SAG). Accordingly, we affirm.

FACTS
¶ 2 The charged events occurred in April 2008 as part of a string of drug-buy robberies in Spokane Valley. During one robbery of Jenna Lee Hall and Aramis Turner, the victims recognized the perpetrators. As a result, Matthew Dunham and Anthony Kongchunji, as well as Nick Smith and Mr. Dunham's brother Larry were arrested.
¶ 3 In a plea bargain, Mr. Dunham offered information about the robbery string; he described his involvement in the Hall-Turner robbery, a robbery in the Dishman area on April 21, and related he was the driver during the earlier robbery of Joni Jeffries and Cliff Berger. He indicated he had committed all of the robberies with Anthony Kongchunji. Regarding the Hall-Turner robbery for which he had been arrested, Mr. Dunham acknowledged Mr. Smith and his brother Larry were involved. Regarding the other robberies, he implicated Robert Larson, Paul Statler, and Tyler Gassman.
¶ 4 The State charged Mr. Larson, Mr. Statler, and Mr. Gassman with one count of first degree robbery; two counts of attempted first degree murder, or alternatively two counts of first degree assault; and two counts of drive-by shooting for the Berger-Jeffries incident. The State added firearm sentence enhancement allegations to the robbery and assault charges.
¶ 5 The prosecutor originally listed the date of the offense as "on or about April 15, 2008." Clerk's Papers (CP) at 1-2. Mr. Larson's defense was alibi. In October 2008, the State located Kyle Williams, who claimed to know the incident occurred on April 17 based on his cell phone records. However, the State did not move to amend the information until January 12, 2009, the morning of trial. The trial court denied dismissal motions, but sanctioned the State $8,000 for carelessness. The court continued the case for three weeks to allow defense counsel additional preparation time.
¶ 6 At trial, Mr. Williams specified the April 17 incident date. The evidence showed Ms. Jeffries and Mr. Berger gave Eric Weskamp and his friend, "Rob," $4,000 to buy oxycontin from Mr. Kongchunji. Mr. Weskamp and Rob went outside to meet Mr. Kongchunji who had arrived in a pickup truck. Mr. Weskamp recognized the driver, Mr. Dunham. The pair began to enter the truck but quickly realized something was amiss. At that point, three unknown men confronted them with a shotgun and pistol; one struck Mr. Weskamp in the face multiple times with the shotgun and forced him to the ground, then the men robbed the pair fled in the truck with Mr. Kongchunji and Mr. Dunham. The pair then returned home and announced they had been robbed. Mr. Berger ran outside in time to see the vehicle pulling away. He and Mr. Williams pursued the truck in Mr. Williams' car. Mr. Berger and Mr. Williams caught up to the fleeing truck; then their car came under gunfire, causing them to call off the pursuit. No one called police or sought medical attention.
¶ 7 Before the Berger-Jeffries trial, Mr. Kongchunji pleaded guilty to committing that robbery and the Dishman robbery, naming Mr. Dunham, Mr. Larson, Mr. Statler, and Mr. Gassman as coparticipants. After pleading, but before the Berger-Jeffries robbery trial, Mr. Kongchunji spoke with Mr. Larson's counsel. During the interview, Mr. Kongchunji allegedly exculpated Mr. Larson in the Berger-Jeffries robbery. Mr. Larson's attorney amended his witness list to include Mr. Kongchunji, and filed an order requesting that Mr. Kongchunji be held in jail as a material witness. Shortly thereafter, Mr. Larson's attorney learned Mr. Kongchunji had given police a "free talk" in which he had apparently named Mr. Larson as a co-participant in the Jeffries/Berger robbery. At about the same time, Mr. Larson's attorney and Mr. Kongchunji were told that *673 if Mr. Kongchunji testified, he could face further criminal charges. Mr. Kongchunji's attorney then told Mr. Larson's attorney not to speak with his client and that his client was not going to testify at trial. Mr. Larson's attorney did not further attempt to subpoena Mr. Kongchunji to testify.
¶ 8 In closing argument, defense counsel argued Mr. Dunham testified against the defendants to protect his brother Larry and receive a light sentence. The jury found Mr. Larson and his co-defendants guilty of the robbery, assaults, and drive-by shootings, finding they were then armed with a firearm.
¶ 9 After trial, Mr. Kongchunji wrote to Mr. Statler's father exculpating Mr. Statler, Mr. Gassman, and Mr. Larson. Mr. Kongchunji explained he refused to testify in the first trial because he was threatened with additional charges, including perjury, if he testified for the defendants.
¶ 10 At Mr. Statler's Dishman trial, Mr. Kongchunji related he and Mr. Dunham devised a plan while in jail to pin the robberies on Mr. Larson, Mr. Statler, and Mr. Gassman to protect Mr. Dunham's brother Larry and their friend Mr. Smith. Mr. Kongchunji testified he and Mr. Dunham committed the Dishman robbery with the "same people I always go rob people with; Larry [Mr. Dunham's older brother], Nick [Smith], Matt [Mr. Dunham]." CP at 115. The jury acquitted Mr. Statler of the Dishman robbery; the State dismissed those charges against Mr. Larson and Mr. Gassman.
¶ 11 Mr. Larson and his codefendants unsuccessfully moved for a new trial arguing Mr. Kongchunji's exculpatory testimony was newly discovered and claiming the State committed misconduct by threatening a potential witness. The trial court reasoned Mr. Kongchunji was an available witness because he had no Fifth Amendment protection after pleading guilty and counsel had made no attempt to compel his testimony. Further, the letter and testimony were not relevant because they related only to the Dishman robbery. Finally, the court reasoned Mr. Kongchunji's testimony would merely rebut or impeach Mr. Dunham. Without addressing misconduct, the judge noted sufficient evidence supported the jury verdicts. Mr. Larson appealed.

ANALYSIS

A. New Trial Motion
¶ 12 The issue is whether the trial court erred in denying Mr. Larson's CrR 7.5(a)(3) motion for a new trial based upon newly discovered evidence.
¶ 13 We review a trial court's new trial ruling for abuse of discretion. State v. Williams, 96 Wash.2d 215, 221, 634 P.2d 868 (1981). A court abuses its discretion when an order is manifestly unreasonable or based on untenable grounds. State v. Roche, 114 Wash.App. 424, 435, 59 P.3d 682 (2002). A "discretionary decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." State v. Quismundo, 164 Wash.2d 499, 504, 192 P.3d 342 (2008) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003)) (internal quotation marks omitted). "Indeed, a court `would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.'" Id. (quoting Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993)). Denial of a new trial is entitled to less deference by a reviewing court than the granting of a new trial. State v. Briggs, 55 Wash.App. 44, 60, 776 P.2d 1347 (1989).
¶ 14 A trial court may grant a new trial under CrR 7.5(a)(3), based on newly discovered evidence, solely when the defendant shows the evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." Williams, 96 Wash.2d at 223, 634 P.2d 868. The absence of any one of these five factors is grounds to deny a new trial. Id. Mr. Larson fails to meet his burden because the evidence was discovered before trial. Therefore, the trial court did not err in denying Mr. Larson's new trial motion. Even so, we *674 acknowledge other factors are also unsatisfied.
¶ 15 When considering whether newly discovered evidence will probably change the trial's outcome, the trial court considers the credibility, significance, and cogency of the proffered evidence. State v. Barry, 25 Wash. App. 751, 758, 611 P.2d 1262 (1980). Here, Mr. Kongchunji exculpated Mr. Larson, Mr. Statler, and Mr. Gassman in a letter to Mr. Statler's father, but he inculpated Mr. Larson in the free talk and when entering his guilty plea. Considering these disparities, while Mr. Statler was acquitted, we cannot say the same would hold true for the Berger-Jeffries robbery. Mr. Larson argues Mr. Dunham's testimony was uncorroborated, but he ignores the potential corroborative effect of having Mr. Kongchunji admit he identified Mr. Larson as one of his coparticipants on at least two other occasions. Considering the potential harmful effect of Mr. Kongchunji's testimony, Mr. Larson's counsel could tactically decide not to risk the potential harmful effect of calling Mr. Kongchunji.
¶ 16 Mr. Larson mistakenly argues Mr. Kongchunji was unavailable during trial. He relies on State v. Slanaker, 58 Wash.App. 161, 791 P.2d 575 (1990), but his reliance is misplaced because in Slanaker, the witness was unavailable because she actually could not be located. Id. at 162-63, 791 P.2d 575. Here, Mr. Kongchunji was in the local jail and was not unavailable in that sense.
¶ 17 Mr. Larson next argues due diligence did not require his defense counsel to attempt to compel Mr. Kongchunji's testimony; he mistakenly relies on State v. Burri, 87 Wash.2d 175, 550 P.2d 507 (1976). In Burri, it was the prosecutor who prevented the witness from speaking to defense counsel. Here, it was Mr. Kongchunji's defense counsel who allegedly prohibited Mr. Larson's counsel from contacting Mr. Kongchunji. Mr. Larson argues Mr. Kongchunji's letter and testimony were posttrial recantations that could not have been anticipated, citing State v. Scott, 150 Wash.App. 281, 294, 297, 207 P.3d 495 (2009). But in Scott, the recanting witness's original testimony was the sole evidence used to convict Mr. Scott and, thus, her recantation essentially voided the case against him. Here, Mr. Kongchunji's original implications were not used as evidence to convict Mr. Larson; rather, it was another witness's testimony that was the primary evidence used to convict. And, Mr. Kongchunji recanted to defense counsel before trial.
¶ 18 Finally, amicus asserts "snitch" testimony is inherently unreliable. Justice Sanders in his dissent in State v. Ish, 170 Wash.2d 189, 241 P.3d 389, 399 n. 5 (2010) recently commented, "[T]he feds gave $100 million to snitches in one recent yeartheir reliability is dubious." But, Washington courts recognize that an informant or snitch may have an interest in testifying against the defendant; therefore, trial courts must give 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 6.05, at 184 (3rd ed. 2008) (WPIC) whenever there is uncorroborated accomplice testimony. State v. Sherwood, 71 Wash.App. 481, 485, 860 P.2d 407 (1993) (quoting State v. Harris, 102 Wash.2d 148, 155, 685 P.2d 584 (1984), overruled on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988)). Pattern jury instructions set out the appropriate wording for such an instruction. WPIC 6.05 states, "Testimony of an accomplice, given on behalf of the [plaintiff], should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth." The court provided this instruction to Mr. Larson's jury. A jury is presumed to follow the court's instructions. State v. Yates, 161 Wash.2d 714, 763, 168 P.3d 359 (2007). The jury found Mr. Dunham's testimony was truthful beyond a reasonable doubt. This court will not substitute its judgment for that of the jury's. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
¶ 19 In sum, the trial court did not abuse its discretion when it denied a new trial based on newly discovered evidence.

*675 B. Ineffective Assistance
¶ 20 The next issue is whether trial counsel was ineffective for failing to subpoena Mr. Kongchunji and compel his testimony at trial.
¶ 21 "We review a challenge to the effective assistance of counsel de novo." State v. White, 80 Wash.App. 406, 410, 907 P.2d 310 (1995).
¶ 22 A defendant possesses the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We presume counsel was effective. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). To prove ineffective assistance of counsel, Mr. Larson must show that (1) defense counsel's representation was deficient; falling below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. State v. Sutherby, 165 Wash.2d 870, 883, 204 P.3d 916 (2009).
¶ 23 A deficient performance claim cannot be based on matters of trial strategy or tactics. State v. Weber, 137 Wash.App. 852, 858, 155 P.3d 947 (2007) (citing State v. Cienfuegos, 144 Wash.2d 222, 227, 25 P.3d 1011 (2001)). "The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics." Id.
¶ 24 Mr. Larson's counsel admitted she believed Mr. Kongchunji had exculpatory evidence. In her new trial motion, Mr. Larson's counsel claimed she did not further interview or subpoena Mr. Kongchunji because she felt that to do so would be "crossing the line" since his counsel said "do not talk to my client again," and he indicated Mr. Kongchunji would not testify. Report of Proceedings (May 20, 2009) at 20. As noted above, counsel had to balance any positive effect of Mr. Kongchunji's exculpatory evidence against the necessarily negative effect of him admitting on cross-examination that he had twice earlier incriminated Mr. Larson. Given all, Mr. Larson fails to overcome the presumption that his counsel's failure to call Mr. Kongchunji was tactical. Therefore, he fails to prove deficient performance. If an ineffective assistance claim can be resolved on one prong, the court need not address the other prong. State v. Staten, 60 Wash.App. 163, 171, 802 P.2d 1384 (1991). Since counsel's performance was not deficient, we do not address prejudice. In sum, Mr. Larson did not receive ineffective assistance of counsel.

C. Misconduct
¶ 25 Mr. Larson contends he was denied a fair trial because the State committed misconduct by threatening Mr. Kongchunji with potential new charges, including perjury if he testified inconsistently with a prior statement.
¶ 26 We review an alleged due process violation de novo. State v. Cantu, 156 Wash.2d 819, 831, 132 P.3d 725 (2006).
¶ 27 Under the United States Constitution, the Sixth and Fourteenth Amendments guarantee persons accused of a crime the right to a fair trial. State v. Davis, 141 Wash.2d 798, 824-25, 10 P.3d 977 (2000). The Washington Constitution provides a similar safeguard. CONST. ART. I, §§ 3, 22. If a defendant's due process right to a fair trial was violated, he is entitled to a new trial. CrR 7.5(a)(5); State v. Lord, 117 Wash.2d 829, 887, 822 P.2d 177 (1991). Due process requires that a defendant have a meaningful opportunity to present a complete defense. Lord, 117 Wash.2d at 867, 822 P.2d 177. The right to present a defense includes the right to offer the testimony of witnesses and to compel their attendance, if necessary. State v. Maupin, 128 Wash.2d 918, 924, 913 P.2d 808 (1996) (citing Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). When a defense witness is threatened and those threats effectively keep that witness off the stand, the accused is deprived of due process of law. State v. Carlisle, 73 Wash.App. 678, 679, 871 P.2d 174 (1994) (citing Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972)).
¶ 28 However, where the State simply provides the witness with a truthful warning, no constitutional violation occurs. Carlisle, 73 Wash.App. at 679, 871 P.2d 174 (citing United States v. Jackson, 935 F.2d 832, 847 (7th Cir.1991)). Additionally, the Ninth Circuit *676 has noted "perjury warnings are not improper per se and the Sixth Amendment is not implicated every time a prosecutor or trial court offers advice regarding the penalties of perjury." United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir.1998) (citing United States v. Davis, 974 F.2d 182, 187 (D.C.Cir. 1992)).
¶ 29 Here, Mr. Kongchunji acknowledged in his written guilty plea that he committed the Berger-Jeffries robbery with Mr. Larson, Mr. Statler, and Mr. Gassman. Upon indicating that he would testify otherwise, the detectives cautioned Mr. Kongchunji against offering false testimony and reminded him of the consequences of perjury. Mr. Larson asserts that even such a warning interfered with Mr. Kongchunji's "free and unhampered choice to testify." Reply Br. of Appellant at 11. While "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process, ... [a] defendant alleging such interference is required to demonstrate misconduct by a preponderance of the evidence." Vavages, 151 F.3d at 1188. Mr. Larson has not made such a showing.

D. SAG
¶ 30 Mr. Larson's concerns about his perception of perjury threats to Mr. Kongchunji have been adequately briefed by counsel and will not be further considered. See RAP 10.10(a). We now turn to his remaining concerns.
¶ 31 Constitutionality of the Public Defenders' Office. Mr. Larson was represented by the Public Defenders' Office. Mr. Larson argues that chapter 36.26 RCW, chapter 43.101 RCW, and WAC 139-15-110 establish a conflict between public defenders and the prosecutor's office due to their compensation and training originating from a common source. His argument is without merit because RCW 36.26.080 clearly specifies that a public defender's loyalties are to his or her client, not the state.
¶ 32 Firearm Enhancement/Double Jeopardy. We review double jeopardy claims de novo. State v. Kelley, 168 Wash.2d 72, 76, 226 P.3d 773 (2010). Mr. Larson claims his two counts of drive-by shooting and two counts of first degree assault violate double jeopardy principles, especially since the jury found he was armed with a firearm during these events. "Both our federal and state constitutions protect persons from being twice put in jeopardy for the same offense." State v. Turner, 169 Wash.2d 448, 454, 238 P.3d 461 (2010); U.S. CONST. amend. V; CONST. art. I, § 9. This includes, "being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense." State v. Linton, 156 Wash.2d 777, 783, 132 P.3d 127 (2006).
¶ 33 "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Double jeopardy is not violated if the legislature intends multiple punishments. Id. at 368, 103 S.Ct. 673. "In short, when a single trial and multiple punishments for the same act or conduct are at issue, the initial and often dispositive question is whether the legislature intended that multiple punishments be imposed." Kelley, 168 Wash.2d at 77, 226 P.3d 773.
¶ 34 In Kelley, our Supreme Court reviewed the legislature's intent as to whether cumulative punishments are intended by imposition of a deadly weapon/firearm enhancement. Id. at 78, 226 P.3d 773. The court in Kelley concluded cumulative punishment is clearly intended. Id. at 80, 226 P.3d 773. Thus, no double jeopardy violation occurred by imposing a deadly weapon enhancement.
¶ 35 Regarding the assault and drive-by shooting charges, if it is unclear whether the legislature intended that multiple punishments be imposed, the court must employ the "same evidence" test. In re Pers. Restraint of Borrero, 161 Wash.2d 532, 536-37, 167 P.3d 1106 (2007) (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Here, the *677 statutory language does not disclose any legislative intent, so we apply the same evidence test-whether the offenses are identical in fact and in law. Borrero, 161 Wash.2d at 537, 167 P.3d 1106. If each offense contains an element not contained in the other, requiring proof of a fact that the other does not, the offenses are not the same. Id.
¶ 36 Assault and drive-by shooting do not violate double jeopardy because each requires proof of facts that the other does not. Assault requires intent to inflict great bodily harm, which is not required for drive-by shooting. See RCW 9A.36.011(1); RCW 9A.36.045(1). Drive-by shooting requires the discharge of a firearm, which assault does not. RCW 9A.36.045(1). Division Two of this court has reached the same conclusion in a similar context. State v. Vincent, 131 Wash.App. 147, 158, 120 P.3d 120 (2005).
¶ 37 Amendment of Offense Date. A ruling on a motion to amend an information is reviewed for abuse of discretion. State v. James, 108 Wash.2d 483, 490, 739 P.2d 699 (1987). CrR 2.1(d) allows an information to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced. The defendant must show prejudice. State v. Brown, 74 Wash.2d 799, 801, 447 P.2d 82 (1968).
¶ 38 Mr. Larson knew the offense date was "on or about April 15, 2008." CP at 1-2. Changing an offense date to April 17, by just two days, would be covered under the "on or about" language. Further, other courts have held, "[w]here the [information] alleges that an offense allegedly occurred `on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date." State v. Bergin, 214 Conn. 657, 574 A.2d 164, 173 (1990); see also United States v. Mitov, 460 F.3d 901, 907 (7th Cir.2006).
¶ 39 While Mr. Larson stresses the amendment affected his alibi defense, the trial court sanctioned the State $8,000 for carelessness in its delay and allowed additional preparation time. No prejudice is shown when, as here, time remains to prepare a defense. State v. Murbach, 68 Wash.App. 509, 512, 843 P.2d 551 (1993).
¶ 40 Filing in District Court. Mr. Larson contends the prosecutor's office acted in bad faith when it filed his case in district court instead of superior court. He asserts the purpose of filing in district court is to allow time for investigation before removing the case to superior court, according to the prosecutor's office policy on superior court direct filings. He argues no investigation took place here for more than one month after filing; thus, the State violated its own office policy. Nothing in the record supports this allegation. If Mr. Larson wishes a reviewing court to consider matters outside this record, a personal restraint petition is the appropriate means to raise such issues. McFarland, 127 Wash.2d at 338, 899 P.2d 1251.
¶ 41 Allowing False Testimony. Mr. Larson argues his due process rights were violated because the State knowingly presented false testimony. A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In re of Pers. Restraint of Benn, 134 Wash.2d 868, 936-37, 952 P.2d 116 (1998). The State called Mr. Williams as a witness. Mr. Williams testified about the car chase, car damage, and the offense date. Mr. Larson has not shown, nor does the record support, that Mr. Williams lied or that the State knew any of his testimony to be false. Further, Mr. Williams was subject to cross-examination and the jury was left to determine the credibility of his testimony. Thus, his argument fails.
¶ 42 Affirmed.
I CONCUR: SWEENEY, J.
KULIK, C.J. (dissenting).
¶ 43 Robert Larson was convicted of robbery, two assaults, two drive-by shootings, and sentenced to 20 years. His counsel's[1] failure to pursue exculpatory testimony from Anthony Kongchunji constituted deficient performance and prejudiced Mr. Larson. I, *678 therefore, dissent from the majority. I would vacate Mr. Larson's convictions and remand for a new trial.
¶ 44 The test for ineffective assistance is well established and requires the defendant to show that "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).

Deficient Performance
¶ 45 The reasonableness of counsel's representation is viewed in light of all of the circumstances. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991). There is a strong presumption that counsel's representation was effective. State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994) (quoting Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir.1985)). Generally, the decision to call a particular witness is presumed to be a matter of legitimate trial tactics. In re Pers. Restraint of Davis, 152 Wash.2d 647, 742, 101 P.3d 1 (2004). However, this presumption can be overcome by showing that counsel failed to investigate or subpoena a necessary witness. Id.
¶ 46 Our Supreme Court has recently reaffirmed that "a criminal defendant can rebut the presumption of reasonable performance by demonstrating that `there is no conceivable legitimate tactic explaining counsel's performance.'" State v. Grier, 171 Wash.2d 17, 33, 246 P.3d 1260 (2011) (quoting State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004)). Significantly, Grier also recognizes that "[n]ot all strategies or tactics on the part of defense counsel are immune from attack." Id. "`The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" Id. (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)).
¶ 47 Here, defense counsel stopped pursuing Mr. Kongchunji's testimony when Mr. Kongchunji's counsel denied access to him. The Ninth Circuit Court of Appeals has repeatedly found similar failures to adequately investigate and present known exculpatory evidence at trial to constitute deficient and prejudicial performance by counsel. See, e.g., Lord v. Wood, 184 F.3d 1083, 1096 (9th Cir.1999) (finding deficient performance and prejudice where "trial counsel had at their fingertips information that could have undermined the prosecution's case, yet chose not to develop this evidence and use it at trial"); Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir.1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.").
¶ 48 At a posttrial hearing, the trial court pointed out that defense counsel could have used due diligence to at least attempt to compel Mr. Kongchunji's testimony. This followed defense counsel's submitting the letter and declaration of Mr. Kongchunji. The letter stated, in part:
I found out that Paul [Statler], Tyler [Gassman], and Robert [Larson] lost their recent trial and I'm stunned. I don't see how the jury could believe Matthew [Dunham] at all because I've read his statement[s] and they are all lies.
I thought that I should let you know that Paul, Tyler, and Robert were not involved with any of the alleged incidents and the reason I know this is because I was involved.
Clerk's Papers (CP) at 222 (emphasis added). Likewise, when testifying in Mr. Statler's second trial, Mr. Kongchunji stated that he committed the Dishman robbery with the "[s]ame people I always go rob people with; Larry, Nick, Matt." CP at 115 (emphasis added). Clearly, this testimony refers to Larry Dunham, Nicholas Smith, and Matthew Dunham, codefendants in other robberies. Mr. Kongchunji possessed crucial exculpatory evidence. His testimony was necessary to ensure that Mr. Larson received a fair trial.
*679 ¶ 49 The majority concludes that defense counsel's failure to call Mr. Kongchunji as a witness at trial was a matter of trial tactics. Accordingly, the majority states: "[C]ounsel had to balance any positive effect of Mr. Kongchunji's exculpatory evidence against the necessarily negative effect of him admitting on cross-examination that he had twice earlier incriminated Mr. Larson. Given all, Mr. Larson fails to overcome the presumption that his counsel's failure to call Mr. Kongchunji was tactical." Opinion at 675.
¶ 50 But this is not the issue. Defense counsel had already made the tactical decision to call Mr. Kongchunji; what she lacked was the legal knowledge and skills to secure his testimony. Stated differently, she was apparently unaware of the procedures available to her to compel Mr. Kongchunji's testimony.
¶ 51 Defense counsel admitted that she did not further interview or subpoena Mr. Kongchunji because she felt that to do so would be to "cross the line" after Mr. Kongchunji's counsel had forbade additional interviews and indicated that his client would invoke his Fifth Amendment rights.[2] Report of Proceedings (May 20, 2009) RP at 11. She also stated that she thought "when you get a direct order from someone's attorney not to talk to their client, I think it would be overstepping bounds to then subpoena [Mr. Kongchunji] to court." RP at 8. And later, "we did everything we could to get the evidence before the Court, but it just wasn't possible. There was nothing else that we could have done.... Mr. Kongchunji was unavailable until after the trial. If we could have gotten Mr. Kongchunji to testify, we certainly would have." RP at 13, 21.
¶ 52 Defense counsel knew that Mr. Kongchunji possessed crucial exculpatory evidence, yet she never asked the court for leave to conduct additional interviews or to rule on whether Mr. Kongchunji's testimony would have received Fifth Amendment protection. Instead, she believed that Mr. Kongchunji was unavailable if his counsel said he was. As a result, it is not possible to know whether or to what extent Mr. Kongchunji would have been excused from testifying at trial.[3]
¶ 53 The State also contended the reason defense counsel made the decision not to call Mr. Kongchunji was a matter of trial tactics. But no competent attorney after having learned the full extent of Mr. Kongchunji's testimony would have failed to put him on the stand, especially given the State's reliance on a witness no more credible than Mr. Kongchunji. Counsel's failure to adequately investigate and subpoena a witness purporting to have actual knowledge of Mr. Larson's innocence was unreasonable in this case and, therefore, deficient.

Prejudice
¶ 54 To demonstrate prejudice, Mr. Larson must show that
"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Mr. Larson "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693, 104 S.Ct. 2052.
¶ 55 Mr. Kongchunji had a powerful incentive to implicate Mr. Larson prior to receiving a 14-year prison term for his own admitted involvement in this crime and the related robberies; namely, a desire to avoid an even more severe sentence. With this incentive exhausted, Mr. Kongchunji had no discernable motive to continue falsifying information. To the contrary, Mr. Kongchunji no doubt weighed considerable disincentives prior to coming forward, including criminal liability *680 for perjury or similar crimes, as well as implicating Larry Dunham and Nicholas Smith in another robbery. That Mr. Kongchunji would be willing to take such risks without perceivable reward strongly suggests that his testimony would be credible.
¶ 56 To say that Mr. Kongchunji's testimony is necessary understates its importance. The State secured a conviction in this matter based solely upon Matthew Dunham's uncorroborated testimony. Detective William Francis testified that Matthew Dunham's statement was the only evidence police had against Mr. Larson. Mr. Kongchunji's letter and subsequent testimony in Mr. Statler's second trial not only exculpate Mr. Larson in respect to the Berger-Jeffries robbery, but also explain how and why Mr. Larson became implicated by Matthew Dunham and Mr. Kongchunji in the first place. This evidence also has proven cogency. Mr. Statler was acquitted following a subsequent trial alleging his involvement in the related Dishman robbery after Mr. Kongchunji testified to its participants. There can be no doubt that Mr. Kongchunji's testimony was necessary here.
¶ 57 Focusing, as I am required, "on the fundamental fairness of the proceeding whose result is being challenged,"[4] I conclude that counsel's deficient performance prejudiced Mr. Larson to an extent that undermines confidence in the outcome of his trial and creates a serious likelihood that justice has not been done.
¶ 58 Accordingly, I respectfully dissent from the majority's conclusion that Mr. Larson received effective assistance of counsel. I would reverse Mr. Larson's convictions and remand for a new trial.
NOTES
[1] Appellate counsel did not serve as trial counsel.
[2] The rules of professional conduct permit counsel to contact a represented witness in such a situation after obtaining permission from the court. RPC 4.2.
[3] Had Mr. Kongchunji been excused from testifying by the trial court, counsel would have then preserved the unavailability of this testimony for purposes of her new trial motion.
[4] Strickland, 466 U.S. at 696, 104 S.Ct. 2052.