## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51198-3-II |
| Respondent, | |
| v. | |
| DANIEL WARREN SPARKS, JR., | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Daniel Warren Sparks, Jr. argues insufficient evidence supports his conviction for assault in the third degree on a police officer. Sparks provides additional arguments in a statement of additional grounds (SAG). We affirm.

### FACTS

I.      INCIDENT

In June 2017, Longview police responded to a domestic violence 911 call made by Kayla Sparks. When Officers Adam Surface and Ralph Webb arrived, they saw Kayla[1] standing in the street physically shaking and screaming that she needed to get her kids back. Before the police could get any information from her, they saw Daniel Sparks, III[2] coming out of a residence screaming at Kayla.

---

[1] To prevent confusion, we refer to Kayla and her husband, Daniel Sparks, III, by their first names. We intend no disrespect.

[2] Daniel Sparks, Jr. is the defendant in this case and the father of Daniel Sparks, III.

Daniel screamed, "'Don't lie to them,'" pointing at Kayla. Report of Proceedings (RP) (Sept. 26, 2017) at 80. He had "fresh red scratch marks" on his arm. RP (Sept. 26, 2017) at 80. Daniel yelled profanities at the police and Kayla. He said the police should not be there because it was not a domestic violence issue. Surface tried to question Daniel, but he turned and began walking up a ramp back toward the house.[3] Surface told Daniel he was not free to go but Daniel ignored him and continued toward the house.

Surface and Webb tried to detain Daniel and handcuff him, but he resisted. As a result, Surface, Webb, and Daniel fell through the railing on the ramp, onto the grass in the front yard. During the struggle, Webb had his back to the bottom of the ramp.

While the officers tried to restrain Daniel, Sparks approached Webb from behind. Surface yelled at Sparks, "'Hey, get back or you'll be under arrest.'" RP (Sept. 26, 2017) at 109. Sparks then grabbed Webb in the upper shoulder area. Webb testified, "[a]long the leg [sic] I could feel pressure or a strike kind of thing on the right side of my head." RP (Sept. 26, 2017) at 110. Sparks tried to pull Webb off Daniel. Later, Webb had a small cut and red mark on his scalp. The jury viewed a picture of Webb's injuries.

Officer Matthew Hartley arrived after the other officers. He saw Sparks go up the ramp. After Sparks grabbed Webb, Hartley grabbed Sparks from behind and forcefully threw him to the ground through the railing on the other side, breaking it. Hartley ordered Sparks to his stomach, but Sparks instead picked up a piece of wood from the broken railing and raised it as if he planned to use it as a weapon.

---

[3] The residence in this case had a ramp up to the front door rather than steps. It had a railing on both sides. As discussed below, many of the events in this case occurred on the ramp.

Sparks testified that he had been outside when the police first arrived and began interacting with Daniel. He said the police "came in, in full force" without questioning or introductions, and immediately attempted to place Daniel in handcuffs. RP (Sept. 27, 2017) at 21. Sparks's wife, also outside the residence, began having a panic attack. Sparks, attempting to get her medication from the residence, walked up the ramp. He said he felt safe taking this action because Daniel was "already on the ground with three cops on him, way off in the grass" and was no longer on the ramp. RP (Sept. 27, 2017) at 23.

Sparks said that, when he got about halfway up the ramp, he was "blind sided and pulled back and taken through the ramp." RP (Sept. 27, 2017) at 23. He testified that, due to health problems that require him to carry a cane, he was unable to stand. He took a board from the now-broken ramp railing and used it to try to stand.

The State charged Sparks with two counts of assault in the third degree on a law enforcement officer,[4] one each against Webb and Hartley, and one count of obstructing a law enforcement officer.[5] The case proceeded to a jury trial.

II.    MEDICAL CONDITION TESTIMONY

Sparks tried to testify about a heart condition that had caused him two heart attacks in the past. He said this condition would have limited his ability to engage police in a fight. Sparks began to testify that "one-third of [his] heart [was] dead" and he had congestive heart failure. RP (Sept. 27, 2017) at 27. The State objected based on relevance and foundation. The court sustained the objection as to foundation. Sparks's attorney then asked Sparks whether he had been diagnosed with a heart condition by a physician and the State objected "to foundation to a diagnosis without

---

[4] RCW 9A.36.031(1)(g).

[5] RCW 9A.76.020(1).

a medical witness to provide that foundation or that testimony." RP (Sept. 27, 2017) at 27. The court sustained the objection, ruling it was "all hearsay at this point." RP (Sept. 27, 2017) at 27.

Sparks argued that the diagnosis would fall into the hearsay exception for statements made for purposes of medical diagnosis or treatment, such that "once it's established that [Sparks had] received this as a medical diagnosis from a physician, he can certainly say what his diagnosis is under that exception." RP (Sept. 27, 2017) at 28. The State responded that the hearsay exception did not apply to a doctor's diagnosis; just statements made to a doctor for purposes of diagnosis. It also argued that Sparks did not "have the foundation to give his own diagnosis because he's not qualified to make that, and a doctor would be but they haven't called a doctor as a witness to make that diagnosis." RP (Sept. 27, 2017) at 30.

The court sustained the objection "on foundation as a—kind of an extension of the hearsay rule," ruling that Sparks could not testify as to "what the doctor's diagnosis was" because that would be hearsay, but he could "certainly describe symptoms of [sic] they're relevant." RP (Sept. 27, 2017) at 32. It ruled that "the diagnosis is part of whether—what the impact of that diagnosis is, is all part of the expert testimony." RP (Sept. 27, 2017) at 33. The court specified that it sustained the objection on the basis of foundation and that hearsay was the reason there was no foundation.

Sparks then testified that he owned a defibrillator for use in case his heart gave out and that the defibrillator limited his physical movements. He also testified that his heart is generally not "in good shape." RP (Sept. 27, 2017) at 34-35.

The jury found Sparks guilty of assault against Webb and of obstructing a law enforcement officer, but not guilty of assault against Hartley. Sparks appeals.

4

ANALYSIS

Sparks contends "substantial evidence" does not support his assault conviction.[6] Br. of Appellant at 9. He claims the State's theory that Sparks hit Webb in the back of the head is unsupported by the evidence. We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

To convict Sparks of assault in the third degree as charged in this case, the jury had to find beyond a reasonable doubt, "(1) That on or about the June 24, 2017 [sic], [Sparks] assaulted Ralph Webb; (2) That at the time of the assault Ralph Webb was a law enforcement officer who was performing his official duties; and (3) That the acts occurred in the State of Washington." CP at 38; RCW 9A.36.031(1)(g). An "assault" is

> [A]n intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.
> An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented.

---

[6] Sparks argues that due process requires that his convictions be supported by "substantial evidence" which is lacking in this case. We evaluate this argument as a challenge to the sufficiency of the evidence.

An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 35; *State v. Elmi*, 166 Wn.2d 209, 215 & n.3, 207 P.3d 439 (2009). In this case, Sparks contends the State presented insufficient evidence that he hit Webb in the head and that an ordinary person who was not unduly sensitive would not find his "incidental contact" with Webb's shoulder offensive. Br. of Appellant at 13.

The State presented evidence in this case that, while Webb struggled with Daniel, Sparks approached him from behind and grabbed him by the shoulders. Webb felt "pressure or a strike kind of thing on the right side of [his] head" and later had a small cut and red mark on his scalp. RP (Sept. 26, 2017) at 110.

In challenging the sufficiency of the evidence, Sparks "necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *Drum*, 168 Wn.2d at 35. A reasonable jury could have inferred from the evidence in this case that Sparks hit Webb in the head. Additionally, many witnesses testified that they saw Sparks grab Webb's shoulders and try to pull him, which a reasonable juror could find offensive to an ordinary person. Sufficient evidence supports Sparks's conviction.

## STATEMENT OF ADDITIONAL GROUNDS

I. SPEEDY TRIAL RIGHTS

Sparks contends that the trial court "violated [his] rights to waive rights to speedy trial" because a "last minute plea deal for misdemeanor was offered" by the prosecutor. SAG at 1. He claims this "would have changed the outcome and no felony conviction would have ever occurred." SAG at 1.

These statements do not amount to a claim for relief. The record does not contain any information about any plea negotiations or Sparks's attempts to waive his speedy trial rights. Sparks may raise matters outside the record in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

II.    POLYGRAPH REQUEST

Sparks contends that all parties, including himself, the police, and all attorneys in the case, should "be compelled to undergo a lie detector test to establish the real truth in this case." SAG at 1.

Courts have "consistently recognized" polygraph tests "as unreliable and, unless stipulated to by all parties, inadmissible." *In re Det. of Hawkins*, 169 Wn.2d 796, 802, 238 P.3d 1175 (2010). Polygraph tests are also intrusive and implicate privacy concerns. *Hawkins*, 169 Wn.2d at 802-03. Sparks acknowledges a lack of legal authority for his request, stating that he asks "the courts to implement this." SAG at 1. We decline to do so.

III.    MEDICAL CONDITION TESTIMONY

Sparks contends that the trial court erred by refusing to let him testify about his heart condition diagnosis without a medical expert witness.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is generally inadmissible unless it comes within an exception. ER 802; *State v. Mohamed*, 186 Wn.2d 235, 241, 375 P.3d 1068 (2016). "[T]his court reviews whether or not a statement was hearsay de novo." *State v. Hudlow*, 182 Wn. App. 266, 281, 331 P.3d 90 (2014). We review evidentiary decisions for an abuse of discretion. *State v. Christopher*, 114 Wn. App. 858, 861, 60 P.3d 677 (2003).

7

ER 803(a)(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This rule exempts statements made to a physician for purposes of receiving a diagnosis; not a diagnosis itself. A doctor's medical conclusions often evade hearsay concerns under the business records exception. RCW 5.45.020; *see, e.g.*, *State v. Ziegler*, 114 Wn.2d 533, 537-38, 789 P.2d 79 (1990); 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 803.19-20, at 70-74 (6th ed. 2016) ("The [medical diagnosis] exception is for statements made *for purposes of* medical diagnosis or treatment, not statements simply describing medical diagnosis or treatment. Thus, the instant hearsay exception is not the appropriate vehicle for introducing a patient's medical records. Medical records are normally admissible but under the business records exception." (footnote omitted)).

The trial court excluded Sparks's description of his own medical diagnosis "on the foundation basis," concluding that "hearsay is the reason there's no foundation." RP (Sept. 27, 2017) at 33. It concluded that any actual diagnosis of a medical condition would have to come from a medical expert qualified to give that diagnosis, because Sparks's statements about his medical diagnosis were not based on personal knowledge but on hearsay from a doctor. The court allowed Sparks to testify about his symptoms, just not about any diagnosis he had received.

Any statements a doctor may have made to Sparks about a medical diagnosis would have been hearsay within the meaning of ER 801(c).  The trial court did not abuse its discretion by rejecting Sparks's argument that his diagnosis was admissible under ER 803(a)(4) because a diagnosis itself is not a statement made for purposes of a diagnosis.[7]

## IV.    EXAGGERATED OFFICER TESTIMONY

Sparks contends that the officers fabricated the truth regarding Daniel's size to "instill an exaggerated fear on the jury."  SAG at 3.  He claims the officer's testimony that Daniel was six foot five was exaggerated because Daniel is actually only six feet tall.  Sparks argues that the "fabricated fear was transferred to the jury," resulting in "an unjust verdict of guilty" and an unfair trial.  SAG at 3.

"A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *State v. Larson*, 160 Wn. App. 577, 594, 249 P.3d 669 (2011).

Surface testified that Daniel was about the same size as Surface and that Surface was six foot five.  Sparks testified that Daniel was "six-foot, two thirty."  RP (Sept. 27, 2017) at 22.  Nothing in the record suggests that Surface's testimony was intentionally false.  We leave credibility determinations to the trier of fact and will not disturb them on review.  *State v. O'Neal*, 126 Wn. App. 395, 412, 109 P.3d 429 (2005).  We deny relief on this claim.

---

[7] Sparks also claims it was unfair that the court let Webb testify about the injuries he sustained in the incident without a medical expert.  Webb did not testify about any medical diagnosis about his injuries, but only the injuries themselves, much as the court allowed Sparks to testify about his symptoms but not the underlying diagnosis.

CONCLUSION

We affirm Sparks's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Sutton, J.