226 P.3d 773 (2010)
168 Wash.2d 72
STATE of Washington, Respondent,
v.
Dustin Ross KELLEY, Petitioner.
No. 82111-9.
Supreme Court of Washington, En Banc.
Argued October 29, 2009.
Decided January 21, 2010.
*774 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Petitioner.
Kathleen Proctor, Melody M. Crick, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.
MADSEN, C.J.
¶ 1 The defendant challenges the Court of Appeals' decision that double jeopardy principles are not violated by imposition of a firearm enhancement where use of a firearm is an element of the underlying offense. We affirm the Court of Appeals.

FACTS
¶ 2 On February 22, 2006, victim Beau Pearson was visiting Klaus Stearns at a trailer in the backyard of Petra Scholl's house in Tacoma. Ms. Scholl is Stearns' mother. Mr. Pearson's girl friend, Valerie Greenfield, accompanied him and was sitting next to him on the bed in the trailer. Also present in the trailer was Kelly Kowalski, another friend of Mr. Stearns. Mr. Stearns, who lived with his mother, had been in and out of the trailer during the day and had stepped out of the trailer to go to the house to talk to his mother.
¶ 3 While Stearns was gone, defendant Dustin Kelley, a friend of Stearns, entered the trailer and started talking to Pearson. Kelley asked Pearson if he had ever been shot before. As Pearson continued to talk to Kelley, Kelley walked toward the door, then turned around and walked back, pulling out two guns. Kelley said, "I smoke you and your bitch, too." 8 Verbatim Report of Proceedings at 609. Pearson turned to Greenfield, said he was sorry and pushed her out of the way as Kelley began shooting. Kelley shot Pearson at least eight times and, Ms. Greenfield testified, pointed a gun at her. She also testified that she was afraid she was *775 going to be shot. Kelley left the trailer. Mr. Pearson died. Greenfield was not hit.
¶ 4 The State charged Kelley with first degree murder, second degree unlawful possession of a firearm, and second degree assault ("intentional[] assault ... with a deadly weapon, to wit: a handgun" while "armed with a firearm, to-wit: .45 caliber handgun and to-wit: 9 millimeter handgun"). Clerk's Papers at 21-22. The State also alleged two firearm enhancements each on the murder and assault charges. On November 21, 2006, the jury convicted Kelley as charged and returned four special firearm enhancements, two pertaining to the assault. On February 9, 2007, the court imposed a standard range sentence and four firearm sentence enhancements.
¶ 5 Kelley appealed. In a partially published opinion the Court of Appeals affirmed, rejecting Kelley's claims that the sentence enhancements on the assault conviction violated double jeopardy principles and that he was provided ineffective assistance of counsel. State v. Kelley, 146 Wash.App. 370, 189 P.3d 853 (2008).

ANALYSIS
¶ 6 Kelley contends that the Court of Appeals erred in holding that a double jeopardy violation does not result from imposition of a firearm enhancement when use of a weapon is an element of the underlying crime. He acknowledges that in prior cases courts have found no double jeopardy violations in such circumstances but contends the double jeopardy analysis has changed as a result of the United States Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Ring v. Arizona, 536 U.S. 584, 605, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)  in particular as a result of Blakely. Under this new analysis, he maintains, the firearm sentence enhancements on his assault conviction violate double jeopardy. As the Court of Appeals correctly held, however, these cases do not require a new analysis and no double jeopardy violation occurred here.
¶ 7 Double jeopardy claims are questions of law that are reviewed de novo. State v. Hughes, 166 Wash.2d 675, 681, 212 P.3d 558 (2009). The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall... be subject for the same offence to be twice put in jeopardy of life or limb." Article I, section 9 of the Washington State Constitution provides that "[n]o person shall ... be twice put in jeopardy for the same offense." The two clauses provide the same protection. In re Pers. Restraint of Borrero, 161 Wash.2d 532, 536, 167 P.3d 1106 (2007); State v. Weber, 159 Wash.2d 252, 265, 149 P.3d 646 (2006). Among other things, the double jeopardy provisions bar multiple punishments for the same offense. N. Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Borrero, 161 Wash.2d at 536, 167 P.3d 1106.
¶ 8 A legislature can enact statutes imposing, in a single proceeding, cumulative punishments for the same conduct. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). If the legislature intends to impose multiple punishments, their imposition does not violate the double jeopardy clause. Id. at 368, 103 S.Ct. 673.
¶ 9 If, however, such clear legislative intent is absent, then the Blockburger test applies. Id.; see Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under this test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. If application of the Blockburger test results in a determination that there is only one offense, then imposing two punishments is a double jeopardy violation. The assumption underlying the Blockburger rule is that Congress ordinarily does not intend to punish the same conduct under two different statutes; the *776 Blockburger test is a rule of statutory construction applied to discern legislative purpose in the absence of clear indications of contrary legislative intent. Hunter, 459 U.S. at 368, 103 S.Ct. 673.
¶ 10 In short, when a single trial and multiple punishments for the same act or conduct are at issue, the initial and often dispositive question is whether the legislature intended that multiple punishments be imposed. Id.; State v. Kier, 164 Wash.2d 798, 804, 194 P.3d 212 (2008); State v. Calle, 125 Wash.2d 769, 888 P.2d 155 (1995). If there is clear legislative intent to impose multiple punishments for the same act or conduct, this is the end of the inquiry and no double jeopardy violation exists. If such clear intent is absent, then the court applies the Blockburger "same evidence" test to determine whether the crimes are the same in fact and law. Calle, 125 Wash.2d at 777-78, 888 P.2d 155.
¶ 11 The United States Supreme Court and this court have both held that no double jeopardy violation occurs when additional punishment is imposed based upon the defendant's use of a firearm or other deadly weapon during a crime, and this is true when use of the firearm or other weapon is an element of the underlying, or base, offense. See Hunter, 459 U.S. 359, 103 S.Ct. 673; State v. Harris, 102 Wash.2d 148, 158-60, 685 P.2d 584 (1984), overruled on other grounds, State v. Ray, 116 Wash.2d 531, 806 P.2d 1220 (1991); see also, e.g., State v. Caldwell, 47 Wash.App. 317, 734 P.2d 542 (1987). In Hunter, the defendant committed robbery while armed with a firearm. Missouri statutes provided for punishment of the crime of first degree robbery, based upon use of a dangerous and deadly weapon, plus additional punishment for use of a dangerous or deadly weapon during the course of a felony (which constituted the offense of "armed criminal action"). The Court found no double jeopardy violation, stating that where, as in Hunter,
a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.
Hunter, 459 U.S. at 368-69, 103 S.Ct. 673; see Harris, 102 Wash.2d at 160, 685 P.2d 584.
¶ 12 The question here is thus whether the legislature's intent is clear that cumulative punishments are intended. We conclude that it is. Indeed, the intent to impose multiple punishments could hardly be clearer. Kelley was convicted of assault under RCW 9A.36.021(1)(c), which provides for guilt of second degree assault when the offender "[a]ssaults another with a deadly weapon." Sentence enhancements were imposed pursuant to RCW 9.94A.533(3), which mandates imposition of firearm sentence enhancements for felonies if the offender or an accomplice was armed with a firearm during the commission of felony enhancement-eligible crimes, subject to express exceptions. The two sentence enhancements for the assault resulted because Kelley was armed with two guns.
¶ 13 The firearms enhancement provisions at issue were originally enacted as part of Initiative 159, "Hard Time for Armed Crime," an initiative to the legislature that it enacted in 1995. LAWS OF 1995, ch. 129, § 2 (RCW 9.94A.310(3)(e), (f), recodified as RCW 9.94A.533(3)). The statute unambiguously states that firearm enhancements are mandatory: "[n]otwithstanding any other provisions of law, all firearm enhancements under this section are mandatory." RCW 9.94A.533(3)(e). Where exceptions are intended, they are expressly stated: "The firearm enhancements in this section shall apply to all felony crimes except the following: Possession of a machine gun, possessing a stolen firearm, drive-by shooting, theft of a firearm, unlawful possession of a firearm in the first and second degree, and use of a machine gun in a felony." RCW 9.94A.533(3)(f).[1] At the time the firearm enhancement *777 provisions were enacted, other criminal statutes provided for convictions of offenses where use of a firearm is an element of the crime. In particular, use of a firearm could then, as now, be an element of assault in the second degree. See LAWS OF 1997, ch. 196, § 2; LAWS OF 1988, ch. 266, § 2.
¶ 14 Cumulative punishment is clearly intended.[2]
¶ 15 Kelley contends, however, that the decisions in Blakely, Apprendi, and Ring have altered the double jeopardy analysis. According to Kelley, these decisions make it clear that there is no longer any difference between an element and a sentencing factor. Then, citing Sattazahn v. Pennsylvania, 537 U.S. 101, 111-12, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), Kelley contends that there is no difference between the analysis for purposes of the Sixth Amendment right to a jury trial, at issue in Apprendi,[3]Blakely,[4] and Ring,[5] and the Fifth Amendment right not to be placed in double jeopardy, one of the issues in Sattazahn, a death penalty case. Thus, according to Kelley, sentencing factors must be treated like elements under the Blockburger test.
¶ 16 Although not entirely clear, Kelley may be arguing in part that because sentencing factors are treated as "elements," the "offense" of being armed with a firearm (the sentence enhancement) is the same in fact and law as the second degree assault of which he was convicted, and a double jeopardy violation occurred. If this is his argument, we reject it because it fails to account for the fact that cumulative punishments can be imposed in the same proceeding if this is the legislature's intent, notwithstanding Blockburger. It appears that Kelley has invoked Blockburger's rule of statutory construction without regard to the initial question whether there is clear evidence of legislative intent that cumulative punishments be imposed.
¶ 17 Kelley also maintains, however, that the sentencing enhancement statutes show that the voters sending Initiative 159 to the legislature intended to create exemptions for crimes where possessing or using a firearm is a necessary element of the crime. As noted above, RCW 9.94A.533(3)(f) states, "The firearm enhancements in this section shall apply to all felony crimes except the following: Possession of a machine gun, possessing a stolen firearm, drive-by shooting, theft of a firearm, unlawful possession of a firearm in the first and second degree, and use of a machine gun in a felony." Kelley suggests the voters were unaware of the "similar problem of redundant punishment created when a firearm enhancement is added to a crime where the punishment has already been increased due to the necessary element of involvement of a firearm." Pet. *778 for Discretionary Review at 8. He points out that Initiative 159 was passed long before Apprendi and Blakely reshaped the sentencing landscape. Essentially, he maintains that the firearm enhancement is an "element" of a greater offense and therefore creates unintended, redundant punishment.
¶ 18 This argument is without merit. It is important to lay it to rest, however, because the Court of Appeals has recently been faced with a number of cases where defendants have made the same argument. See, e.g., State v. Nguyen, 134 Wash.App. 863, 142 P.3d 1117 (2006); State v. Toney, 149 Wash. App. 787, 205 P.3d 944 (2009); State v. Gallagher, noted at 150 Wash.App. 1027, 2009 WL 1515080 (unpublished opinion). In Nguyen, the Court of Appeals appropriately concluded that the "argument is essentially based upon semantics" and "assigns an unsupportable weight to the Blakely [as well as Apprendi and Ring] Court's use of the term `element' to describe sentencing factors." Nguyen, 134 Wash.App. at 869, 142 P.3d 1117.
¶ 19 Apprendi, Blakely, and Ring all concern the Sixth Amendment right to a jury trial. In that context, the Court described aggravating factors that increase punishment as "the functional equivalent of an element" that must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490, 494 n. 19, 120 S.Ct. 2348. Similarly, Ring says that aggravating factors necessary for imposition of a death penalty "operate as the `functional equivalent of an element of a greater offense.'" Ring, 536 U.S. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). None of these cases concern the double jeopardy clause.
¶ 20 As to Sattazahn, which does concern double jeopardy, the case is plainly distinguishable on its facts because it does not involve cumulative punishments imposed in one proceeding. Rather, in Sattazahn the jury had deadlocked at a first capital sentence proceeding and the judge therefore automatically entered a life sentence as is required by Pennsylvania's statute. On appeal the case was reversed in part and remanded. On retrial the defendant was convicted and sentenced to death. At issue was whether double jeopardy was violated by the second capital sentencing proceeding.[6]
¶ 21 Not only is Sattazahn distinguishable on its facts, the part upon which Kelley relies, part III, carries no weight.[7] Only two justices joined Justice Scalia in this part of the opinion and it therefore lacks any precedential value.
¶ 22 Next, contrary to Kelley's argument, the exceptions in RCW 9.94A.533(3)(f) do not show intent that sentence enhancements should not apply when use of a firearm is an element of the offense. As mentioned, when Initiative 159 was enacted, the second degree assault statute was the same in relevant part as it is now, and the legislature is presumed to have known this. Wynn v. Earin, 163 Wash.2d 361, 371, 181 P.3d 806 (2008) ("[t]he legislature is presumed to know the law in the area in which it is legislating"); State v. Torres, 151 Wash.App. 378, 385, 212 P.3d 573 (2009) (same). From the outset it was apparent that the statute would mandate imposition of firearms enhancements on those committing second degree assault with a deadly weapon. The same was (and is) true of other offenses where being armed with a deadly weapon is an element of the offense. See, e.g., RCW 9A.52.020(1)(a) (burglary in *779 the first degree) (LAWS OF 1975 1ST EX.SESS. ch. 260, § 9A.52.020); RCW 9A.56.200(1)(a)(i) (robbery in the first degree) (LAWS OF 1975 1ST EX.SESS. ch. 260, § 9A.56.200).
¶ 23 Moreover, the fact that the exceptions in the statute are expressly listed actually cuts against Kelley's argument and shows intent that crimes that involve weapons other than those listed are not to be excepted. Expression of one thing in a statute implies exclusion of others and this exclusion is presumed to be deliberate. State v. Delgado, 148 Wash.2d 723, 63 P.3d 792 (2003).
¶ 24 Apprendi and Blakely have not altered application of the statute. The defendant must spend a mandatory set amount of time in prison in addition to the sentence for the base crime. This was true when Initiative 159 was enacted into law, it is plainly the intent behind the legislation, and it accords with precedent from this court and the United States Supreme Court that holds that cumulative punishments may be imposed for the same act or conduct in the same proceeding if that is what the legislature intended.

CONCLUSION
¶ 25 We hold that imposition of a firearm enhancement does not violate double jeopardy when an element of the underlying offense is use of a firearm. The decisions in Apprendi, Blakely, Ring, and Sattazahn do not alter the double jeopardy analysis. The Court of Appeals is affirmed.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, GERRY L. ALEXANDER, JAMES M. JOHNSON, RICHARD B. SANDERS, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
NOTES
[1] RCW 9.94A.533 provides in relevant part:

(3) The following additional times shall be added to the standard sentence range for felony crimes ... if the offender or an accomplice was armed with a firearm ... and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements.... If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement.
....
(e) Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.
(f) The firearm enhancements in this section shall apply to all felony crimes except the following:....
[2] Initiative 159 contains findings that also show intent to punish those carrying deadly weapons and firearms, stating, in part, the intent to "provide greatly increased penalties for gun predators and for those offenders committing crimes to acquire firearms." LAWS OF 1995, ch. 129, § 1.
[3] The court held in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
[4] In Blakely, the Court held that the statutory maximum is the maximum sentence that a judge may impose solely on the facts reflected in the jury verdict or admitted by the defendant. Blakely, 542 U.S. at 303, 124 S.Ct. 2531.
[5] In Ring, the Court held that the right to trial by jury is violated by a procedure where a sentencing judge sitting without a jury finds aggravating circumstances necessary to impose the death penalty. Ring, 536 U.S. at 609, 122 S.Ct. 2428.
[6] As the Court's opinion (the majority opinion) explains,

the relevant inquiry for double-jeopardy purposes [is] not whether the defendant received a life sentence the first time around, but rather whether a life sentence was an "acquittal" based on findings sufficient to establish legal entitlement to the life sentence  i.e., findings that the government failed to prove one or more aggravating circumstances beyond a reasonable doubt.
Sattazahn, 537 U.S. at 108, 123 S.Ct. 732.
[7] In part III of Sattazahn, Justice Scalia posited that in accord with Apprendi and Ring, aggravating factors for purposes of a death sentence are functional equivalents of elements of a greater offense than murder, i.e., "`murder,'" of which the defendant was convicted the first time, was a lesser included offense of "`murder plus one or more aggravating circumstances.'" Sattazahn, 537 U.S. at 111, 123 S.Ct. 732. Justice Scalia added that because the jury never made any findings regarding the aggravators and the life sentence was reversed due to instructional error, jeopardy had never terminated with respect to either offense.