[No. 38660-7-II.   Division Two.   October 19, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. AUGUSTUS M. OAKLEY, *Appellant*.

546

Rebecca W. Bouchey*, for appellant.

Rebecca W. Bouchey, for appellant.

Mark E. Lindquist, Prosecuting Attorney, and Melody M. Crick and Kathleen Proctor, Deputies, for respondent.

¶1 PENOYAR, C.J. — Augustus Martel Oakley appeals three second degree assault convictions and an attempted

drive-by shooting conviction. He argues that (1) insufficient evidence supported the attempted drive-by shooting conviction because his gun failed to discharge, (2) the imposition of firearm enhancements on his assault convictions violated his right to be free from double jeopardy, and (3) the trial court erred by ordering restitution because the damages were unrelated to his convictions. Oakley also raises a number of challenges in his statement of additional grounds.[1] We affirm Oakley's attempted drive-by shooting conviction and the imposition of firearm enhancements for his assault convictions, but we reverse and remand to the trial court to vacate the portion of the restitution order that applies to Oakley.

## FACTS

¶2 On the night of April 15, 2007, Stephen Lynn received a phone call informing him that Oakley was upset at him for "snitch[ing]" about an incident that had occurred earlier in the month. 8 Report of Proceedings (RP) at 1067. Stephen[2] invited Oakley to come fight him. About 15 minutes later, Richard Taylor and Oakley arrived in Oakley's distinctively loud car and parked a block away from the Lynns' residence.

¶3 Stephen and his older brothers, Isaiah and Christopher, approached the car. Stephen told Oakley to get out of the car and fight. Oakley got out of the car and pulled a gun. Stephen testified that he heard Oakley "cock" the gun and saw the gun go "up in the air" as though Oakley could not control it. 8 RP at 1076, 1088. He heard the gun make a noise "like it backfired" and saw black and orange "dust" come out of the gun. 8 RP at 1090. Christopher testified that he saw a spark at the end of the gun barrel and heard a "crackling sound" as though the gun had jammed. 6 RP at

[1] RAP 10.10.

[2] Because there are multiple witnesses from the Lynn family, we refer to the Lynns by their first names.

654. Robert Moyer, the Lynns' neighbor and a law enforcement officer, heard a noise similar to a firecracker or a car backfiring around the same time that the incident took place. The three Lynn brothers turned and ran back to their house.

¶4 Taylor and Oakley followed the Lynns to their yard, where fisticuffs ensued. After a couple of minutes, the fight broke up, and Oakley and Taylor returned to the car. At this point, several neighbors and the Lynn parents had emerged from their houses. Oakley and Taylor drove back by the Lynns' house. Four witnesses testified that they saw a gun or a stick-like object protruding out the window as the car drove past. Three of the witnesses saw Oakley holding the gun. Christopher testified that when Oakley "tried to shoot again," he heard the same "cracking sound" as before. 6 RP at 679. Police did not find bullets or shell casings at the scene.

¶5 Minutes after the police received a call about the incident, another call came in regarding an incident that occurred about three blocks from the Lynns' house. Neighbors saw and heard a loud older car with two passengers drive toward a gate at the end of the street[3] and then reverse back down the street. The car pulled into Ross Dejong's driveway, and Dejong and his neighbors heard a loud crash. The car drove away through an open gate. Dejong's vehicle and garage door suffered damage.

¶6 At about 9:30 PM, police located Oakley's car at Taylor's house. There were two men in the car, both in their late teens to early twenties. Both attempted to flee. One suspect escaped, but police took Taylor into custody. Police impounded Oakley's car.

¶7 A search of Oakley's car revealed an SKS rifle. Two cartridges were jammed facing each other in the SKS's chamber. A firearms expert testified that the rifle would not fire with the cartridges in that configuration. The expert

---

[3] The Lynns lived in a gated community.

tested the rifle and concluded that it was operable when the cartridges were loaded properly.

¶8 The State charged Oakley with three counts of first degree assault and one count of drive-by shooting. The jury convicted Oakley of lesser included crimes—three counts of second degree assault and one count of attempted drive-by shooting. The jury also returned three special verdicts finding that Oakley was armed with a firearm during each of the assaults. Accordingly, the trial court imposed a firearm enhancement on each of his three assault convictions. The trial court entered a restitution order stating that Oakley and Taylor were jointly and severally responsible for $3,872.28 in damages to Dejong's vehicle and garage door.

## ANALYSIS

I. INSUFFICIENT EVIDENCE

¶9 Oakley argues that there was insufficient evidence to support his attempted drive-by shooting conviction because the gun could not and did not discharge. We disagree.

¶10 Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

¶11 RCW 9A.36.045(1) defines the crime of "drive-by shooting":

A person is guilty of drive-by shooting when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a

manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). A "substantial step" is "conduct strongly corroborative of the actor's criminal purpose." *State v. Aumick*, 126 Wn.2d 422, 427, 894 P.2d 1325 (1995).

¶12 We find that there was sufficient evidence to convict Oakley of attempted drive-by shooting. Oakley took a substantial step toward committing a drive-by shooting when he pointed a gun at the Lynns from the vehicle and attempted to fire it. Several witnesses observed the gun protruding from the car window as the car drove past the Lynns' house and identified Oakley as the individual holding the gun. Christopher heard a "cracking sound" like the sound of a gun jamming when Oakley "tried to shoot again." 6 RP at 679. The firearms expert stated that the gun was operable if loaded correctly. Thus, although the gun did not discharge, there was sufficient evidence for a jury to convict Oakley of attempted drive-by shooting beyond a reasonable doubt.

## II. FIREARM ENHANCEMENTS

¶13 Oakley argues that the three firearm enhancements added to his second degree assault sentences constituted double jeopardy because firearm use was an element of the underlying assault offenses. He acknowledges that we have previously rejected double jeopardy challenges to firearm enhancements but maintains that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), support his position. We disagree.

¶14 Our Supreme Court recently issued a unanimous opinion holding that the imposition of a firearm enhance-

ment does not violate double jeopardy when firearm use is an element of the underlying offense. *State v. Kelley*, 168 Wn.2d 72, 84, 226 P.3d 773 (2010). In *Kelley*, the defendant appealed the firearm enhancements on his second degree assault conviction. 168 Wn.2d at 75. He argued that *Apprendi, Blakely*, and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), required sentencing factors to be treated like elements under the *Blockburger*[4] test. *Kelley*, 168 Wn.2d at 80.

¶15 Our Supreme Court disagreed, stating that the legislature clearly intended to impose multiple punishments in Kelley's case. *Kelley*, 168 Wn.2d at 78. The court noted that the statute that authorizes firearm enhancements unambiguously states, with clearly stated exceptions, that firearm enhancements are mandatory. *Kelley*, 168 Wn.2d at 79 (quoting RCW 9.94A.533(3)(e), (f)). The use of a firearm was an element of second degree assault at the time the legislature enacted the enhancement provisions and the legislature did not exempt this crime from the statute's reach. *See Kelley*, 168 Wn.2d at 79. Additionally, the court noted that *Apprendi, Blakely*, and *Ring* all involve the right to a jury trial and do not concern double jeopardy. *Kelley*, 168 Wn.2d at 81-82. Thus, under *Kelley*, imposing firearm enhancements on Oakley's second degree assault convictions is not a violation of his right to be free from double jeopardy.

III. RESTITUTION

¶16 Oakley argues that the trial court erred when it ordered him to pay restitution for damages caused by uncharged acts. We agree.

¶17 A trial court derives its authority to order restitution from statute rather than any inherent power.

---

[4] Under the *Blockburger* test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

*State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). We review a trial court's authority to order restitution under the statute de novo. *State v. Edelman*, 97 Wn. App. 161, 165, 984 P.2d 421 (1999). But "[w]hen the particular type of restitution in question is authorized by statute, imposition of restitution is generally within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Davison*, 116 Wn.2d at 919.

▆▆ ¶18 A trial court has authority to order restitution under RCW 9.94A.753(5), which reads in relevant part, "Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." "[R]estitution is appropriate so long as there is a causal connection between the crime and the injuries for which compensation is sought." *State v. Enstone*, 89 Wn. App. 882, 886, 951 P.2d 309 (1998). "A causal connection exists when, 'but for' the offense committed, the loss or damages would not have occurred." *Enstone*, 89 Wn. App. at 886 (quoting *State v. Hunotte*, 69 Wn. App. 670, 676, 851 P.2d 694 (1993)). The trial court cannot impose restitution based on a defendant's " 'general scheme' " or acts " 'connected with' " the crime charged, when those acts are not part of the charge. *State v. Woods*, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998) (internal quotation marks omitted) (quoting *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

▆ ¶19 In *State v. Dauenhauer*, the court vacated a restitution order for damages resulting from uncharged acts. 103 Wn. App. 373, 379-80, 12 P.3d 661 (2000). In that case, Dauenhauer burglarized three storage units. 103 Wn. App. at 375. He drove through two fences and collided with a truck in an attempt to flee a police officer who observed Dauenhauer at the crime scene. *Dauenhauer*, 103 Wn. App. at 375. A jury convicted Dauenhauer of second degree burglary, and the trial court ordered him to pay restitution for damage to the fences and the truck. *Dauenhauer*, 103 Wn. App. at 379. The court determined that the trial court had no statutory authority to order restitution for these

damages because they resulted from "Dauenhauer's 'general scheme' or acts merely 'connected with' the burglaries." *Dauenhauer*, 103 Wn. App. at 380.

¶20 Here, there was no causal connection between Oakley's charged crimes—the assaults and the attempted drive-by shooting—and the damages to Dejong's vehicle and garage door. Oakley inflicted these damages while he fled the scene of the assaults and attempted drive-by, crimes that he had committed in a different area of the neighborhood. Although Oakley's flight, like the defendant in *Dauenhauer*, was "connected with" his underlying crimes because he was trying to avoid apprehension when he caused the damages, Oakley did not crash into Dejong's vehicle and garage door as a result of his assaults and attempted drive-by shooting. Because we conclude that there is insufficient causal connection between the charged crimes and the damages, we remand to the trial court to vacate the portion of the restitution order that applies to Oakley.

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT and VAN DEREN, JJ., concur.