COURT OF APPEALS DIV 1
2017 DEC 26 AM 8: 27


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
         Respondent, )
   v. )
ROBERT RAYMOND RAETHKE, )
         Appellant. )

No. 75079-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 26, 2017

TRICKEY, A.C.J. — Robert Raethke appeals his conviction of second degree assault committed with sexual motivation and his sentence to life without the possibility of parole under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW. Raethke argues that the trial court erred in instructing the jury on the "abiding belief" definition of proof beyond a reasonable doubt. He next contends that the trial court violated his due process and Sixth Amendment rights when it imposed a sentence of life without the possibility of parole but did not have the jury find the fact of his prior convictions beyond a reasonable doubt. He also argues that his right against double jeopardy was violated when the same fact was used to satisfy an element of his underlying crime and support his sentence under the POAA. Finding no error, we affirm.

## FACTS

On April 30, 2014, A.C. was walking her dog along the Arlington Airport Trail when she encountered Raethke. Raethke told A.C. that she was beautiful and asked for a hug. Raethke grabbed A.C. in a hug and began kissing her on the

neck and cheek. Although A.C. repeatedly shoved Raethke and told him to let her go, Raethke held on for seven to ten seconds. After Raethke let go of her, A.C. told him she was going to call the police and Raethke ran away. Later, A.C told Officer Peter Barrett that she thought she was going to be raped when Raethke was hugging and kissing her.

The State charged Raethke with second degree assault with sexual motivation based on intent to commit indecent liberties by forcible compulsion. The State noted that, if convicted, Raethke would be a persistent offender under the POAA and would be sentenced to life in prison without the possibility of parole.

Prior to trial, the State moved to admit evidence of Raethke's prior convictions of first degree rape and attempted first degree rape, including testimony of his prior victims S.C., K.D., and M.H. The trial court admitted the prior victims' evidence under ER 404(b) on the issue of Raethke's intent to commit indecent liberties and so that the jury could evaluate whether the crime was sexually motivated.

At trial, S.C., M.H., and K.D. testified that Raethke had grabbed them on wooded trails and taken them into the woods to sexually assault them.

The jury found Raethke guilty of assault in the second degree, and found that he committed the crime with sexual motivation.

At Raethke's sentencing, the State offered a certified copy of his prior judgments and convictions for first degree rape and attempted first degree rape. The trial court sentenced Raethke to life without the possibility of parole as a persistent offender under the POAA.

2

Raethke appeals.

## ANALYSIS

### Proof Beyond a Reasonable Doubt Instruction

Raethke argues that the trial court erred because its instruction on the beyond a reasonable doubt standard of proof included language about the jury having an "abiding belief in the truth of the charge."[1] The State responds that Washington courts have previously approved of this language. We agree with the State.

Jury instructions "must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

The *Washington Pattern Jury Instructions – Criminal* (WPIC) 4.01 provides a model reasonable doubt instruction:

> [The] [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists [as to these elements].
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

---

[1] Clerk's Papers (CP) at 78.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 401 (4th ed. 2016) (WPIC) (boldface omitted) (alterations in original). The Washington Supreme Court has approved of this "abiding belief" instruction, and directed that trial courts must use it to instruct the jury on the government's burden and reasonable doubt. See Bennett, 161 Wn.2d at 308, 317. This court has relied on Bennett to uphold the use of WPIC 4.01, including the optional "abiding belief in the truth" language. State v. Fedorov, 181 Wn. App. 187, 199-200, 324 P.3d 784 (2014).

A challenged jury instruction is reviewed de novo, "'in the context of the instructions as a whole.'" State v. Brett, 126 Wn.2d 136, 171, 892 P.2d 29 (1995) (quoting State v. Benn, 120 Wn.2d 631, 655, 845 P.2d 289 (1993)).

Here, the trial court's reasonable doubt instruction was identical to WPIC 4.01, including the bracketed "abiding belief in the truth of the charge" language.[2] Bennett approved of WPIC 4.01, including the "abiding belief in the truth of the charge" language, and has not been overturned. WPIC 4.01 has not been replaced with a new reasonable doubt instruction. We are bound by Bennett, and conclude that the trial court did not err when it gave the jury a reasonable doubt instruction based on WPIC 4.01.

Raethke argues that this court should specifically disapprove of the optional "abiding truth" language in WPIC 4.01 because several subsequent cases have disapproved of argument characterizing the jury's role as finding or declaring the truth. See State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014); State v.

---

[2] CP at 78.

Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012); State v. Berube, 171 Wn. App. 103, 120-21, 286 P.3d 402 (2012). None of these cases are persuasive. Each case concerned remarks made by the prosecutor during closing argument telling the jury to speak the truth or search for the truth. None challenged Bennett's direction to use WPIC 4.01 as a reasonable doubt instruction. We reject this argument.[3]

### Bench Findings of Prior Convictions

Raethke argues that the trial court violated his due process and Sixth Amendment rights when it sentenced him to life without the possibility of parole under the POAA without a jury finding that he was an offender with a prior strike beyond a reasonable doubt. The State responds that the Washington Supreme Court has already rejected this argument. We agree with the State.

"The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151, 2156, 186 L. Ed. 2d 314 (2013). "[A]ny fact that increases the [mandatory minimum sentence of the crime] is an 'element' that must be submitted to the jury." Alleyne, 133 S. Ct. at 2155. But the fact of a prior conviction does not need to be submitted to a jury and proved beyond a reasonable doubt, even if it may increase the penalty for the crime at issue beyond the statutory maximum. Apprendi v. New Jersey,

---

[3] This court has previously rejected an analogy to cases involving prosecutorial "speak the truth" comments during closing arguments. See Fedorov, 181 Wn. App. at 200 (rejecting an analogy to Emery, 174 Wn.2d at 760). Raethke does not distinguish the instructions at issue in Fedorov and in the present case. We reject this analogy.

530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); see also Blakely v. Washington, 542 U.S. 296, 308, 313-14, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (holding that a sentence above the statutory maximum based on the sentencing judge's finding of deliberate cruelty violated the defendant's Sixth Amendment rights, but not questioning Apprendi's exception for prior convictions).

"[F]or the purposes of the POAA, a judge may find the fact of a prior conviction by a preponderance of the evidence." State v.Witherspoon, 180 Wn.2d 875, 892, 329 P.3d 888 (2014). The POAA does not violate state or federal due process by not requiring that a jury must find the existence of prior strike offenses beyond a reasonable doubt. Witherspoon, 180 Wn.2d at 891-92 (discussing Alleyne, 570 U.S. 99, Blakely, 542 U.S. 296, and Apprendi, 530 U.S. 466).

"The State bears the burden of proving by a preponderance of the evidence the existence of prior convictions as predicate strike offenses for purposes of the POAA." Witherspoon, 180 Wn.2d at 893 (citing State v. Knippling, 166 Wn.2d 93, 100, 206 P.3d 332 (2009)). "'The best evidence of a prior conviction is a certified copy of the judgment.'" State v. Hunley, 175 Wn.2d 901, 910, 287 P.3d 584 (2012) (quoting State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)).

Constitutional issues are questions of law that are reviewed de novo on appeal. State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

Here, prior to Raethke's sentencing, the State introduced a certified copy of Raethke's prior judgments convicting him of four counts of first degree rape and one count of attempted first degree rape. At the sentencing hearing, the trial court said that it had received the certified copy of the prior judgments before stating that

No. 75079-8-I / 7

it found Raethke to be a persistent offender. Thus, the State met its burden of proving Raethke's previous strike offenses by a preponderance of the evidence. We conclude that trial court did not violate Raethke's due process and Sixth Amendment rights when it did not require the jury to find the existence of his prior convictions beyond a reasonable doubt.

## Double Jeopardy

Raethke argues that the trial court erred when it imposed a sentence of life without the possibility of parole because it lacked the statutory authority to consider his present offense a strike crime. The State responds that Raethke was properly sentenced because his single sentence under the POAA does not implicate his right against double jeopardy. We agree with the State.

"No person shall be compelled in any criminal case to . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9; see also State v. Gocken, 127 Wn.2d 95, 102, 896 P.2d 1267 (1995) (noting that the state and federal constitutions' double jeopardy protections are "virtually identical" and are given the same interpretation). The double jeopardy clause protects against a second prosecution for the same offense following an acquittal or a conviction and against multiple punishments for the same offense. Gocken, 127 Wn.2d at 100.

If a defendant has been subjected to a second or cumulative sentence, the reviewing court must determine whether clear legislative intent supports the trial court's imposition of the sentence. State v. Kelley, 168 Wn.2d 72, 76-77, 226 P.3d 773 (2010) (citing Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983)). Absent such clear legislative intent, the reviewing court must apply

7

the test laid out in <u>Blockburger v. United States</u> to determine whether there are two offenses at issue or one. 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

"Double jeopardy claims are questions of law that are reviewed de novo." <u>Kelley</u>, 168 Wn.2d at 76.

Here, Raethke's sentence of life without the possibility of parole based on his second strike offense under the POAA does not violate his right against double jeopardy. Raethke was charged with and convicted of assault in the second degree with the intent to commit indecent liberties by forcible compulsion. He had previously been convicted of first degree rape and attempted first degree rape. Thus, his present conviction for assault in the second degree with sexual motivation qualified as a second strike requiring a sentence of life without the possibility of parole under the POAA. RCW 9.94A.030(38)(a)(i),(b)(i); <u>see also</u> RCW 9A.36.021(1)(e).

Raethke received a sentence of life without the possibility of parole as a persistent offender under the POAA. He did not receive a separate sentence for assault in the second degree. Thus, he has received a single sentence for a single offense. We conclude that Raethke's right against double jeopardy was not implicated in the present case.[4] <u>See</u> <u>Jones v. Thomas</u>, 491 U.S. 376, 382 n.2, 109

---

[4] Raethke also argues that his right against double jeopardy was violated because the finding of sexual motivation both satisfied an element of his underlying crime and was used as a sentencing enhancement of sexual motivation under the POAA, relying on federal case law. The Washington Supreme Court has previously rejected the argument that using the same fact as both an element of the underlying offense and as an enhancement violates double jeopardy. <u>See</u> <u>Kelley</u>, 168 Wn.2d at 76 (stating that imposing a sentencing enhancement based on the same facts as an element of the underlying crime does not violate double jeopardy, acknowledging <u>Apprendi</u>, 530 U.S. 466, <u>Blakely</u>, 542 U.S. 296, and <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S. Ct. 2428, 153 L.

S. Ct. 2522, 105 L. Ed. 2d 322 (1989). Thus, we need not determine whether Raethke's sentence was supported by clear legislative intent or apply the Blockburger test.

## Statement of Additional Grounds

In his statement of additional grounds, Raethke provides a recitation of the facts and argues that there is insufficient evidence to support his conviction of second degree assault with the intent to commit indecent liberties. He contends that the facts would only support a conviction for fourth degree assault. We disagree.

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Raethke was convicted of assault in the second degree with the intent to commit indecent liberties. "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . [w]ith intent to commit a felony, assaults another." RCW 9A.36.021(1)(e). Indecent liberties occurs when an offender "knowingly causes another person to have sexual contact with him or her or another: . . . [b]y forcible compulsion" is a class A felony. RCW 9A.44.100(1)(a). "Sexual contact" is defined as "any touching of

---

Ed. 2d 556 (2002)). We follow the Washington Supreme Court's precedent and reject Raethke's argument.

the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "Forcible compulsion" is defined in part as "physical force which overcomes resistance." RCW 9A.44.010(6).

Here, A.C. testified that she did not consent to being hugged or kissed by Raethke. A.C. testified that Raethke held her for seven to ten seconds in spite of her attempts to shove him away and her telling him to let her go. A.C. also testified that she thought she was going to be raped when she was being hugged and kissed by Raethke. Raethke's prior victims testified that Raethke's actions in the present case were similar to when he sexually assaulted them.

Viewing this evidence in the light most favorable to the State, the record contains sufficient evidence to sustain Raethke's conviction of second degree assault with the intent to commit indecent liberties. Raethke assaulted A.C. when he hugged and kissed her without her consent, and acted with forcible compulsion when he held on to her despite her physical resistance. There is a reasonable inference from the testimony of A.C. and Raethke's prior victims that Raethke acted with intent to touch A.C.'s "sexual or other intimate parts . . . for the purpose of gratifying" his sexual desire. RCW 9A.44.010(2). Thus, a rational trier of fact could have found the essential elements of Raethke's offense beyond a reasonable doubt. We reject Raethke's argument.

Raethke analogizes to State v. R.P. to argue that his actions were insufficient to constitute indecent liberties. 122 Wn.2d 735, 736, 862 P.2d 127 (1993) (holding that there was insufficient evidence of sexual contact to sustain

10

conviction of indecent liberties when offender left a "hickey" on victim's neck area). This is unpersuasive. Raethke was convicted of second degree assault with the intent to commit indecent liberties, not indecent liberties itself. The fact that his actions were insufficient to constitute indecent liberties is irrelevant to determining whether he acted with intent to commit indecent liberties. We reject this argument.

### Appellate Costs

Raethke asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. But when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, the trial court found Raethke did not have an ability to pay legal financial obligations. If the State has evidence indicating that Raethke's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

_Trickey, A C J_

WE CONCUR:

_Dwyer, J._ _Appelwick, J._