# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51724-8-II |
| Respondent, | |
| v. | |
| KEVIN ARTHUR STANFIELD, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — Kevin Stanfield appeals an order of restitution. The restitution resulted from Stanfield's attempting to elude a pursuing police vehicle conviction. At sentencing, the court ordered that he pay $24,873.50 in restitution for damage to a police vehicle.

Stanfield argues that an insufficient causal connection exists between his crime and the damage.

In a statement of additional grounds (SAG), Stanfield further asserts that he received ineffective assistance of counsel, that the deputy's actions during the police chase violated both department policy and his rights under the Fourth Amendment to the United States Constitution, that the State violated double jeopardy, and that the State violated his Fifth Amendment rights. Stanfield additionally asserts that the statute defining the crime attempting to elude a pursuing police vehicle is unconstitutionally vague.

We affirm.

FACTS

One evening, Deputy Nathan Betts pursued Stanfield following an alleged assault Stanfield committed at a gas station. Stanfield refused to stop in response to Betts's lights and sirens. At one point, Stanfield entered a highway and began speeding. He reached speeds between 90 and 100 miles per hour.

Stanfield attempted to enter an Interstate 5 (I-5) northbound onramp, but he spun out into a grass median. After coming to a stop in the median, Stanfield reentered the highway. Betts, who had been pursuing Stanfield, attempted an unsuccessful precision immobilization technique (PIT) maneuver.[1] Stanfield sped away.

Stanfield reached I-5 and drove in the far-right merge-only lane. Betts entered the lane just to the left of Stanfield. Betts eventually pulled nearly level with Stanfield such that his front bumper was near Stanfield's driver's side door. Stanfield then turned into Betts, causing both vehicles to crash.

Betts's vehicle slid across four lanes of traffic and crashed into the concrete center median. Stanfield's vehicle similarly went across the four lanes of traffic and crashed into the center median. However, Stanfield's vehicle went up and over the 4-foot center median, coming to a stop upside down in the I-5 southbound lanes. The police later took Stanfield to the hospital and interviewed him.

The State charged Stanfield with two counts of assault in the second degree, assault in the fourth degree, and attempting to elude a pursuing police vehicle. Stanfield pled not guilty to all charges, and the case proceeded to trial.

---

[1] A PIT maneuver is an attempt to disable a vehicle by using the front end of one vehicle to hit the back of the other vehicle to spin it out and stop it.

The court held a pretrial hearing regarding the admissibility of statements Stanfield made to police officers when they interviewed him at the hospital. The State introduced evidence that Stanfield was transported to the hospital shortly after the accident. The police visited Stanfield at the hospital and read him his *Miranda*[2] rights. Stanfield said he understood his rights and agreed to speak. The police then asked Stanfield questions, and he appeared to understand their questions and gave appropriate responses.

Stanfield, on the other hand, presented evidence indicating that he was in poor mental condition when the police interviewed him. For instance, the police acknowledged that he had blood on his face during the interview, and they were also aware that Stanfield had suffered a small brain bleed. Stanfield stated that, as of trial, he had no recollection of the hospital interview.

The court found the statements admissible. It stated:

> [C]learly, the deputy advised [Stanfield] correctly of his rights and indicated that there was no threats, there were no promises, there was no coercion, asked if he wanted to answer questions and he responded yes. And I think he was coherent and seemed to understand what the questions were and what were appropriate in his responses.

2 Report of Proceedings (RP) (Feb. 21, 2018) at 160.[3]

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The record does not contain findings of fact and conclusions of law from the hearing.

The statements were later introduced at trial. At the hospital, Stanfield had told the police "he was trying to defend a homeless person [at the gas station,] and those f*****s called the police." 2 RP (Feb. 21, 2018) at 223. Stanfield also told the police "that when [Betts] got behind him and turned on his lights it scared him and he did something stupid." 2 RP (Feb. 21, 2018) at 223.

Stanfield testified that he saw Betts with his lights and sirens on behind him. Stanfield said that he was coming to a stop when Betts attempted the PIT maneuver on him, which scared him so he attempted to flee. Stanfield also testified that he did not see Betts to his left when he merged onto I-5 and crashed into him.

Stanfield did not object to the court's jury instructions. He did not propose an instruction for an affirmative defense[4] to the attempting to elude a pursuing police vehicle charge.

The jury found Stanfield guilty of attempting to elude a pursuing police vehicle but acquitted him of the three other charges.

At Stanfield's sentencing hearing, the State sought restitution in the amount of $24,873.50 for damage to the police vehicle. Stanfield objected. The trial court imposed the State's requested restitution. Stanfield appeals.

ANALYSIS

Stanfield argues that the trial court erred in imposing restitution because the damage to the police vehicle was not caused by his attempt to elude the police. We disagree.

We review a sentencing court's authority to order restitution de novo. *State v. Oakley*, 158 Wn. App. 544, 552, 242 P.3d 886 (2010). A trial court's authority to impose restitution is derived

---

[4] It is an affirmative defense to the crime of attempting to elude a pursuing police vehicle if "(a) A reasonable person would not believe that the signal to stop was given by a police officer; and (b) driving after the signal to stop was reasonable under the circumstances." RCW 46.61.024(2).

from statute. RCW 9.94A.753; *State v. Enstone*, 137 Wn.2d 675, 682, 974 P.2d 828 (1999). The statute only authorizes a court to impose restitution if a causal connection exists between the defendant's offense and the damage for which restitution is sought. *Enstone*, 137 Wn.2d at 682. Whether the loss is causally connected to the crime for which the defendant was convicted is a question of law which we review de novo. *State v. Acevedo*, 159 Wn. App. 221, 229-30, 248 P.3d 526 (2010).

A causal connection exists if "but for" the offense, the loss or damages to a victim's property would not have occurred. *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007).

Here, the jury found Stanfield guilty of attempting to elude a pursuing police vehicle. In his attempts to elude the police, Stanfield reached almost 100 miles per hour in his vehicle. At one point, the police tried to end the chase by performing a PIT maneuver on Stanfield's vehicle. The maneuver was unsuccessful, and Stanfield continued to flee. Eventually, Stanfield turned his car into Betts's, causing both vehicles to crash. Extensive damage resulted.

We conclude that a causal connection exists between Stanfield's crime and the damage to the police vehicle, and we affirm the order of restitution.

SAG

I.    INEFFECTIVE ASSISTANCE OF COUNSEL

Stanfield appears to assert that he received ineffective assistance of counsel because his attorney failed to request the affirmative defense jury instruction to the crime of attempting to elude a pursuing police vehicle. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v.*

*Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

A party is entitled to a jury instruction on a theory of the case when evidence exists in the record to support the party's theory. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). The trial court views the evidence in the light most favorable to the party requesting the instruction. *State v. Fernandez–Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

Here, in order for Stanfield to have been entitled to the instruction, the evidence at trial must have established that a reasonable person would not have believed that Betts was a police officer who signaled Stanfield to stop and that Stanfield's decision to continue driving after the signal was reasonable. RCW 46.61.024(2).

We conclude that the evidence, including Stanfield's testimony, does not support the giving of an instruction on this affirmative defense.

II.    VIOLATION OF POLICE MODEL POLICY

Stanfield asserts that Betts violated Washington Association of Sheriffs & Police Chiefs (WASPC) model policy.  We reject Stanfield's argument.

Pursuant to RCW 43.101.225, law enforcement officers must be trained on vehicular pursuits.  A neighboring statutory provision requires that the law enforcement bodies of the State of Washington "develop a written model policy on vehicular pursuits."  RCW 43.101.226(1).  Pursuant to this legislative directive, WASPC developed the *WASPC Model Policy—Vehicle Pursuits*,    https://www.waspc.org/assets/ProfessionalServices/modelpolicies/vehiclepursuit.pdf.  The model policy establishes guidelines in the event of a motor vehicle pursuit and lists numerous factors an officer should consider when deciding to terminate a pursuit, including the seriousness of the offense and safety to the public.

Stanfield does not argue how any alleged violation of the model policy provides him relief.  We reject his argument.

III.    SEARCH AND SEIZURE

Stanfield asserts that Betts's PIT maneuver was an unlawful seizure under the Fourth Amendment to the United States Constitution.[5]  We disagree.

"[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied."  *Brower v. County of Inyo*, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) (emphasis omitted).  However, the United States Constitution only prohibits unreasonable searches and seizures.  U.S. CONST. amend. IV.

---

[5] Stanfield does not argue that Betts's actions violated his rights under article I, section 7 of the Washington Constitution.

"The analysis . . . focuses on whether the police have acted reasonably under the circumstances." *State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005).

In *Scott v. Harris*, 550 U.S. 372, 375, 386, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), the Supreme Court concluded that an officer's crashing into the rear of the respondent's fleeing vehicle was reasonable under the circumstances and therefore did not violate the Fourth Amendment. In determining the reasonableness of the police officer's actions, the Court "consider[ed] the risk of bodily harm that [the officer's] actions posed to respondent in light of the threat to the public that [the officer] was trying to eliminate." *Scott*, 550 U.S. at 383. Because crashing into the rear of the respondent's vehicle was less dangerous than other potential methods and because of the sizeable threat the respondent posed to others, the court "ha[d] little difficulty in concluding it was reasonable for [the officer] to take the action that he did." *Scott*, 550 U.S. at 384.

We similarly conclude that Betts's PIT maneuver was reasonable under the circumstances. Due to the speed at which Stanfield fled from the police, along with other factors, he threatened the lives of others. Accordingly, we conclude that Betts's PIT maneuver did not violate Stanfield's rights under the Fourth Amendment.

Furthermore, the police did not obtain any evidence as a result of the allegedly unlawful PIT maneuver. Thus, even if we concluded that the PIT maneuver was unlawful, there is nothing to suppress. We conclude that Stanfield's argument on this issue fails. *Cf. State v. Scherf*, 192 Wn.2d 350, 371, 429 P.3d 776 (2018) (because there were no statements to suppress, the court concluded that "even if a [CrR 3.1] violation occurred, it was harmless").

IV.     DOUBLE JEOPARDY

Stanfield asserts that the State violated his rights to be free from double jeopardy when it charged him with attempting to elude a pursuing police vehicle (RCW 46.61.024) and negligent driving in the second degree (RCW 46.61.525). We disagree.

The record does not indicate that the State charged Stanfield with negligent driving in the second degree. Because Stanfield's claim relies on factual allegations that are outside the record of this appeal, we have no ability to assess his arguments. Accordingly, we reject his claim and conclude that any remedy is only available through a personal restraint petition. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

V.      UNLAWFUL INTERROGATION

Stanfield asserts that the police officers' interrogation of him at the hospital after the accident violated his rights under the Fifth Amendment to the United States Constitution. We disagree.[6]

To be valid, a waiver of *Miranda* rights must be voluntarily, knowingly, and intelligently made. *Miranda v. Arizona*, 384 U.S. 436, 444, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant. *North Carolina v. Butler*, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

---

[6] Stanfield does not assign error to the fact that the court failed to enter findings of fact and conclusions of law after the CrR 3.5 hearing. The absence of written findings is harmless if a trial court's oral ruling is sufficient to permit appellate review. *State v. Weller*, 185 Wn. App. 913, 923, 344 P.3d 695 (2015). Here, the record is sufficient to permit review. Therefore, we conclude that the court's error was harmless.

We review a trial court's denial of a suppression motion in two stages. First, we review the trial court's findings of fact for substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 130, 942 P.2d 363 (1997). Substantial evidence supports a finding where there is a sufficient quantity of evidence to persuade a rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Unchallenged findings of fact are verities upon appeal. *Hill*, 123 Wn.2d at 644. Second, we determine whether the findings of fact support the trial court's conclusions of law, an issue we review de novo. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

It appears that Stanfield only challenges the court's finding that he was sufficiently coherent and the court's conclusion that he made a voluntary, knowing, and intelligent waiver. Therefore, the court's other findings are deemed verities.

We first conclude that substantial evidence supports the court's findings. We next conclude that the court's findings of fact support its conclusion that Stanfield made a voluntary, knowing, and intelligent waiver when he subsequently agreed to speak with the police. Accordingly, the trial court did not err in finding Stanfield's statements admissible.

## VI.    VAGUENESS

Stanfield asserts that the statute defining the crime of attempting to elude a pursuing police vehicle, RCW 46.61.024, is unconstitutionally vague because it uses the term "immediately." We disagree.

In *State v. Sherman*, 98 Wn.2d 53, 56-57, 653 P.2d 612 (1982), the court rejected the identical argument that Stanfield makes here. The court held that the term "immediately" in RCW 46.61.024 does not render the statute unconstitutionally vague. *Sherman*, 98 Wn.2d at 57; *see also*

*State v. Mather*, 28 Wn. App. 700, 702-03, 626 P.2d 44 (1981) (same). We similarly reject Stanfield's assertion.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, P.J.

We concur:

Glasgow, J.

Fearing, J.